E. B. LAW AND SON, INC., a Corporation, Plaintiff,

v.

UNITED STATES of America, and Interstate Commerce Commission, Defendants.

Civ. A. No. 5803.

United States District Court
D. New Mexico.
April 12, 1965.

William J. Lippman, of Galland, Kharasch, Calkins & Lippman, Washington, D. C., R. Deane Moyer, Albuquerque, N. M., for plaintiff.

Clarence William Vandegrift, Attorney, Office of General Counsel, Interstate Commerce Commission, Washington, D. C., John H. D. Wigger, Atty. Dept. of Justice, Washington, D. C., for defendants.

J. E. Gallegos, Santa Fe, N. M., for intervening defendant, Whitfield Tank Lines, Inc.

Before SETH, Circuit Judge, PAYNE, Chief Judge, and BRATTON, District Judge.

PER CURIAM.

The plaintiff commenced this action to set aside certain orders of the Interstate Commerce Commission entered in a proceeding entitled No. MC–106278 (Sub-No. 21) E. B. Law and Son, Inc. Extension—El Paso, Texas. Plaintiff contends that the Commission by its report and order restrictively construed its existing certificate to prevent it from hauling certain petroleum products. The court has jurisdiction under 28 U.S.C.A. § 1336 and 49 U.S.C.A. § 17(9) to review the order of the Commission.

The plaintiff is engaged in the business of transporting petroleum products in interstate commerce by motor carrier, and holds certificates of public convenience and necessity from the Interstate Commerce Commission. A certificate was issued to the plaintiff in 1951 in the proceeding designated No. MC–106278. This certificate authorized plaintiff to operate over certain routes to carry "refined petroleum products, in bulk, in tank

trucks, except refined liquefied gases, casing head gasoline, and residuary petroleum products." Plaintiff engaged in business under the above authority, and in 1963, a new asphalt refining plant located in El Paso, Texas, began production of asphalt and sales to points within the plaintiff's territory. The complaint asserts that the plaintiff sought to haul this asphalt, but was refused by reason of the shipper's uncertainty as to the commodity scope of the plaintiff's certificate, the question apparently being raised by the shipper as to whether the asphalt would be under the general category of a refined petroleum product or whether it would be excluded as a residuary petroleum product. In order to obtain an interpretation from the Commission, the plaintiff filed an application to transport asphalt and other products from El Paso to points within its territory. In accordance with accepted practice, the plaintiff at the same time filed a motion to dismiss the application on the ground that the authority was contained in its existing certificate.

A hearing on plaintiff's application was held before a joint Board, and evidence was introduced and testimony was heard. The application was opposed by a competing carrier, Whitfield Tank Lines, Inc., which was an intervening defendant in this action. In due course, the Board filed an order and report. Thereafter Division I of the Interstate Commerce Commission filed its report and order which was contrary in some respects to the joint Board's findings. The Commission's order found that the original certificate of the plaintiff was ambiguous as to the products under consideration. It also held that the certificate excluded asphalt.

The plaintiff duly filed a petition for reconsideration, but its petition was denied. Plaintiff thereafter commenced this proceeding.

■■■ It is apparent from the authorities, as the plaintiff fully recognizes in its brief, that the Interstate Commerce Commission has the primary responsibility for the interpretation of its certificates. The plaintiff states that this authority of the Commission is not limitless, and we agree. The position of the reviewing court in a case involving the interpretation of a certificate has been passed upon by the Supreme Court in a series of cases which include Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484, and Service Storage & Transfer Co. v. Commonwealth of Virginia, 359 U.S. 171, 79 S.Ct. 714, 3 L.Ed.2d 717. The same issue has been of course considered by a large number of district courts, including Mitchell Bros. Truck Lines v. United States, D.C., 225 F.Supp. 755; W. T. Mayfield Sons Trucking Co. v. United States, D.C., 211 F.Supp. 619, and Malone Freight Lines, Inc. v. United States, D.C., 107 F.Supp. 946. No useful purpose would be served by a further statement of these principles. Suffice it to say that if the proceedings conform to law, the Commission's interpretation of the certificate will be accepted unless it is clearly erroneous (Andrew G. Nelson, Inc. v. United States, supra), or unless it is capricious, arbitrary, or an abuse of discretion.

■■ The plaintiff here urges that the Commission ignored relevant evidence pertaining to several issues. Specifically it urges that the Commission did not consider the record of the proceedings wherein the certificate in question was originally granted (No. MC–103871). As in any case, the Commission must consider all relevant evidence on the issues presented. W. T. Mayfield Sons Trucking Co. v. United States, supra; Bird Trucking Co. v. United States, D.C., 159 F.Supp. 717. The Commission here specifically found that the certificate of the plaintiff was ambiguous, and held that under such circumstances it could search the record of the original proceedings in order to ascertain the meaning (94 M.C. C. p. 537). There follows in its report a statement of applicant's contention that the original record does not show an intent to exclude asphalt because it was not mentioned. The Commission then stated

that there was also no mention of other petroleum products in the record which were included within the exclusion. The Commission also states that the amendment limiting the scope of the hearing was made without explanation of its meaning. Thus it clearly appears that the Commission did give consideration to the record of the source proceedings. The Commission apparently concluded that there was no assistance to be given by such record in the interpretation of the certificate. The plaintiff disagrees with the Commission's conclusion or inference to be drawn from the record in the source proceedings, but the question is whether or not consideration was given by the Commission. The record clearly shows that such consideration was given. The inferences to be so drawn from the record are for the Commission unless they are arbitrary or clearly erroneous, and we cannot say that they are.

■ Plaintiff further objects that the Commission does not discuss or mention evidence relied upon and presented by the plaintiff. The record shows the relevant evidence was considered, and the Commission need not mention or refer to all the evidence presented in its Report.

■■ The plaintiff for its next point urges that the Commission must give consideration to trade usage in arriving at the meaning of the terms used in the certificate. The authorities are clear that the determination of trade usage in the transportation field by the Commission is well within its powers, and is a matter peculiarly within its experience. The plaintiff in effect urges that the Commission did not give sufficient consideration to usage within the transportation industry, and again disagrees with the inferences drawn by the Commission. The Commission stated that as a matter of practice in interpretation of commodity descriptions, industry or trade usages or practices in the transportation industry are to be followed rather than literal definitions or dictionary definitions. The Commission also stated that there was no evidence which was indicative of a common usage or understanding in the

transportation industry as to the meaning of "residuary petroleum products." The record thus shows that due consideration was given to such evidence. The Commission again found that the solution was not to be found in the use of the terms by the transportation industry. The plaintiff disagrees with this conclusion, but we certainly cannot say that it was arbitrary.

The Commission, finding that there was no assistance by reference to the usage of the term in the transportation industry, next turn to the petroleum industry. The record shows that the processes used by asphalt plants were described in detail by evidence and the testimony of several witnesses, as were the methods used by the particular plant at El Paso from which plaintiff sought to haul asphalt. The Commission considered this evidence, found a slight difference in terms used in the petroleum industry from that used in the certificate, "residual" being used in the industry rather than "residuary."

The Commission determined how the terms were used in the refining business, and reached its decision that asphalt was a residual product prepared from petroleum products or portions thereof which do not vaporize in the fractional distillation process. Plaintiff objects to the treatment by the Commission of this evidence and testimony, and urges that it made no reference to certain witnesses who appeared on plaintiff's behalf. The Commission stated plaintiff's position on this point and observed that certain recited facts developed at the hearing did not support plaintiff's argument on this point. Again the Commission is not required to discuss each item presented to it nor to separately evaluate the testimony of each witness.

The record describes the asphalt plant from which the plaintiff sought to haul in some detail. It appears that the plant received its raw material by pipeline from a nearby oil refinery. This feed stock is then processed or refined in stills where chemical and physical reactions take place. This process is so con-

ducted to produce a product to meet certain specifications set up by the users primarily for highway construction. The record shows that the feed stock for the asphalt plant comes from a crude unit at the nearby oil refinery and is described as a "bottom." This is the material left after the oil refinery has removed the lighter fractions. The testimony shows that the crude oil was divided into four sections by the crude unit at the oil refinery, and the heaviest of these goes to the asphalt plant. This material is then further treated and refined. The record shows that in any event, the lighter portions of the crude oil are removed before asphalt is prepared, the extent of this removal can be raised within limits from time to time in a refinery, and may vary in different refineries. There was testimony that a residue or residuum means something which is rejected as of no use. It is apparent that the terms "residue," "residuum," "residual," and the certificate term "residuary," as applied in the petroleum industry mean a substance remaining after some treatment or refining process which has removed something. It obviously then becomes a matter of degree or where we are on the scale of lightest to heaviest results of previous processing. Under the record, the raw material for the asphalt refinery at El Paso was a residual product from the oil refinery, it was the "bottoms" from their process. As to the asphalt plant, it was material still in process for them to further treat, and there was again a residue at the end of their process.

■ As mentioned, the Commission concluded that asphalt was a "residuary" within the meaning of the term as used in plaintiff's certificate. The conclusion so reached by the Commission that asphalt is a residual product (although refined), and hence is within the exclusionary phrasing of the certificate, is one supported by the record and is not arbitrary or capricious.

The plaintiff urges that the method used by the Commission in reaching a result is in effect the application of a "source" test rather than a determination dependent only upon the physical nature of the particular product concerned. Plaintiff urges that by reason thereof, the ambiguity of the certificate language is perpetuated. The plaintiff says in effect that it as a transporter cannot examine a particular petroleum product and determine whether or not it is within its certificate without having to find its origin.

The plaintiff in its proceedings before the Commission basically sought to have a determination made by it as to whether or not it could legally transport asphalt products of the American Bituminals Plant at El Paso, Texas. This necessitated an interpretation of language in its certificate as it related to asphalt. The hearing was limited, with only minor references otherwise, to the question whether "asphalt" was within the meaning of plaintiff's certificate and the Commission answered that question. The plaintiff presented its case which for all practical purposes was so limited to asphalt. We agree that the interpretation made by the Commission is not particularly helpful to the plaintiff as to other petroleum products, but the proceeding was limited as above described. The Commission disposed of the issue presented to it, and the ambiguity of the certificate as to asphalt has been resolved. Plaintiff's application to initiate the proceedings was very much broader than asphalt, and was in fact an application for authority to haul a variety of petroleum products. However from the outset, the testimony and evidence as presented by plaintiff was limited.

The plaintiff urges that the Commission has reached a conclusion contrary to Empire Petroleum Co. v. Chicago, B. & O. R. Co., 315 I.C.C. 291. This cited case was concerned with the proper rate to be applied under a tariff. The Commission there found that the product could be classified as "asphalt," but it also fell within a more restricted classification of reduced crude which could be carried at a lower rate. We find no real inconsistency between the cited case and the

decision under review. The Commission in the Descriptions Case (Descriptions in Motor Carrier Certificates, 61 M.C.C. 209) considered the proper grouping of petroleum products carried in tank vehicles of motor carriers. It there classified "asphalt" as within "Residues" category, being the heaviest end of the refinery fractions. This again is not inconsistent with the decision before us.

The plaintiff also urges that the Commission did not make findings in sufficient detail as required by law, but we find no merit in this contention.

The findings and conclusion of the Commission are supported by the record, they are not arbitrary nor do they represent an abuse of discretion. Under these circumstances they will be accepted by a reviewing court. Thus the relief prayed for by plaintiff must be denied and the complaint dismissed.